# B. W. GARRETT v. STATE.

No. A-2492.   Opinion Filed June 28, 1918.

Rehearing Denied September 24, 1918.

(174 Pac. 799.)

1. **HOMICIDE—Instructions—Applicability to Facts.** On the trial of a person charged with homicide, it is unnecessary for the court to submit to the jury a proposition of law inapplicable to the facts developed.

2. **HOMICIDE—Self-Defense—Evidence.** In order to bring a homicide within the law of justification on the ground of self-defense, it is necessary that there be some probative facts upon which the jury could legitimately reach this conclusion.

*Appeal from District Court, Jackson County;*
*Frank Mathews, Judge.*

B. W. Garrett was convicted of manslaughter in the first degree, and appeals.   Affirmed.

*Dabney & Thorpe, John D. Rogers, Ben F. Williams,*
*P. K. Morrill,* and *John E. Luttrell,* for plaintiff in error.

*R. McMillan,* Asst. Atty. Gen., and *C. E. Hall,* Co. Atty., for the State.

ARMSTRONG, J.   The plaintiff in error, B. W. Garrett, was tried at the January, 1915, term of the district court of Jackson county on a charge of murder, and was convicted of manslaughter in the first degree.   The court fixed the punishment at 12 years' imprisonment in the state penitentiary.

The information charges the plaintiff in error, Garrett, with the murder of Jim Thornton, on the 13th day of July, 1914.   It appears that on July 12, 1914, Garrett and other persons, who were driving in the country near Headrick, procured some beer from the deceased, Thorn-

ton; that after returning to the town of Headrick, Garrett went to a restaurant and ordered a meal. Thornton came in, and demanded that Garrett pay what he owed for the beer. A fight ensued, in which both of the parties received injuries. Following the fight on the night of the 12th, the deceased made numerous threats against the life of the accused, which threats were communicated to him. A number of witnesses also testified to having interceded with the deceased on the morning of the homicide to let the trouble drop. All of these, with one exception, say that he declined to do so, and insisted that he was going to have vengeance; that both he and the accused could not live in the town longer. Two or three witnesses endeavored to settled the difficulty peaceably. The deceased refused to adjust the matter amicably. The witnesses state that the accused, Garrett, said that he was willing to settle, and would be glad to do so and let the matter drop. Negotiations for a settlement were dropped, and the witnesses informed Garrett that the trouble could not be adjusted. Shortly after these negotiations ceased, the deceased came down the sidewalk and passed in front of Garrett's place of business. Some witnesses say that he walked straight along and did not stop in front of the place. The accused testified tht deceased did stop, and attempted to enter the pool hall, and that he shot him in the recessed entrance; that he followed out on the street and shot him two or three times more. One shot seems to have entered the body on the right side and penetrated through, coming out on the left side. The other shots apparently entered the body from the rear.

Proof was offered on behalf of the accused tending to show that the deceased was a man who habitually carried a revolver, and was prone to use it on slight provocation.

Specific acts of misconduct with the revolver known to the accused were not permitted to be shown by the trial court. It was the contention of the accused at the trial that the deceased started to enter his place of business, and he ordered deceased not to come in, and that deceased attempted to come in anyway, and that he shot deceased in order to prevent deceased from killing him or doing him serious bodily harm. Much complaint is made in the brief against the instructions given by the court, as well as the refusal to give certain requested instructions offered by the defendant. Upon examination, however, we find that the material instructions given by the court have been approved in this jurisdiction. It will be unnecessary, therefore, to discuss them.

The only assignment of error, based upon the refusal of the court to give instructions requested, which we feel it necessary to discuss at all, is a request for an instruction in which counsel sought to have the court submit to the jury as conclusive that the acts of the deceased at the time of the homicide, in attempting to walk into the pool hall, testified to by the accused and viewed from his standpoint, amounted to a hostile, overt act upon the part of the deceased. We shall not undertake to discuss the request further than to say that, even though it was sufficient to call the court's attention to the proposition relied upon, the testimony of the accused himself did not warrant the court in submitting it. No hostile, overt act is disclosed. It rather overwhelmingly appears that the homicide was an unnecessary one viewed from the testimony offered at the trial by the defendant himself. The fact that the deceased was unarmed; that he made no hostile demonstration whatever as if to do immediate injury to the accused; the numerous shots fired, and the manner in which they

took effect; the fact that the accused followed on to the sidewalk and fired a number of shots into the body of deceased after he had taken flight—can hardly be said to bring this homicide within the law of necessary self-defense.

An impartial review of the record discloses no prejudicial error, but leads conclusively to the conclusion that a just verdict was reached under the law.

The judgment is therefore affirmed.

DOYLE, P. J., and MATSON, J., concur.